Herbert, J.,
dissenting. It is apparent from the syllabus that the majority of this court is of the opinion that the “consumer,” Stutler, has established its “purpose to use and consume the property purchased directly in the rendition of a public utility service.” With that interpretation of the facts, the writer cannot agree, especially in the light of the two cases relied upon, namely, Apex Powder Corp. v. Peck, Tax Commr., supra, and Zinc Engravers v. Bowers, Tax Commr., supra.
What the court is really confronted with in this case is the *28 meaning of the phrase, “the purpose of the consumer is * # * to' use or consume the thing transferred * * * directly in the rendition of a public utility sbrvice,” as contained in Sections 5739.01 and 5741.01, Eevised Code. (Emphasis added.)
It should be noted that this phrase. does not require merely that it be the purpose of the consumer that the property be used directly in the rendition of a public utility service, but requires that it be the purpose of the consumer to so use it. As I construe the phrase, the consumer must therefore be able to render the service.
Unlike many business activities, to qualify as a public utility, particularly in the motor transportation field, one must be prepared to serve any and all of the public desiring the service and to submit to strict regulation in the event of securing a certificate of public, convenience and necessity.
In this case it is conceded that Stutter itself is not legally qualified to render a public utility service but operates this truck over A. C. E. routes under a lease arrangement with A. C. E., the truck carrying A.C.E. public utility permits. Stutler’s contract is solely with A.C.E. and not with any of the shippers whose goods it hauls. It is of no concern to the court whether A.C.E.’s operational plan with Stutter is more or less economical than if A.C.E. owned and operated its own truck. The point is that Stutter is not rendering and cannot render any public utility service to the public. It is merely rendering a stipulated service to A.C.E. as it appears in its contract with A.C.E. A.C.E. has the obligation to furnish public utility service over certain routes under its permits, and the only public utility service being rendered through the use of Stutter’s truck is being rendered by A.C.E.
The two cases cited in the majority opinion as supporting the decision here do not do so, in the opinion of the writer. In the Apex case, Apex entered into a contract with a strip-mine property owner to perform certain drilling and blasting operations in connection with such strip mine so that the owner could remove the mineable mineral from its property for sale. Apex was paid for its blasting operation by the mine owner. There is no question in that case that the acts performed by Apex constituted the use of the things sought to be taxed “directly *29 in the production of tangible personal property # * * by mining,” within the meaning of the statutory language.
The distinction sought by the Tax Commissioner was that, because Apex did not own or sell the mineable minerals, Apex was not within the exception of the statute. This court merely held that a corporation may be engaged directly in the production of tangible personal property by mining without being the owner of the minerals produced. Factually, there can be no doubt that Apex was actually engaged in mining and produced tangible personal property for sale by mining, but on the agreed facts in this case most of the aspects of public utility service are not rendered by Stutler.
The second case relied upon by the majority is Zinc Engravers v. Bowers, Tax Commr., supra. That case involved the purchase of mats, engravings and etchings by a retail merchant called A. Polsky Company, which items were then delivered by Polsky to a newspaper without charge to be used in newspaper advertisements concerning Polsky’s merchandise. That case turned entirely on the use made of the mats by Pol-sky and not by the newspaper. The second paragraph of the syllabus in that case excepted the sale of the mats and engravings from the tax and did so on the specific proposition that there it was the purpose of the consumer, namely Polsky, to use and consume the materials “directly in making retail sales.” Particular attention is called to page 52 in the opinion in the Zinc Engravers case where the effort of the claimant in that case to extend the rule of the Apex case was denied because, as stated, the test of the transaction was “the purpose of the consumer to use or consume” and not whether the purpose of the consumer “was that the thing transferred be used or consumed.”
According to my view of the decision in the Zinc Engravers case, Polsky, the consumer there, is comparable to A.C.E., who is not the consumer here, and the newspaper using the mats and engravings in the production of the advertisements for Polsky there is in a comparable position to Stutler here with respect to actual use of the truck.
Each of the cited cases hinged on a factual determination.
In the Apex case, it was determined that “the purpose of” the appellant was “to use or consume” the blasting equipment *30 “directly in the production of tangible personal property for sale by * * * mining,” which final fact is clearly supported in the record in that case.
In the Zinc Engravers case, it was held that the mats, engravings and etchings purchased there by the retail merchant and delivered to the newspaper publishers were used by that retail merchant “directly in making retail sales,” another factual finding clearly supportable on the record in that case.
Here, the majority finds as a fact that the consumer Stutler has the purpose to use and consume the truck purchased by it “directly in the rendition of a public utility service” and that such use is therefore excepted from the sales or use tax even though Stutler is not itself a public utility. The majority fails to recognize one fact, in the opinion of the writer. The majority opinion states that “the statute does not say that the consumer must be a public utility. It simply says that it must be his purpose to use or consume the thing transferred directly in the rendition of a public utility service.” That statement so far as it goes cannot be disputed, but' it certainly raises the question as to whether it goes far enough.
The consumers in both the Apex and Zinc Engravers cases were lawfully able to and did perform the operations in which they were using and consuming the materials the sale or use of which was sought to be excepted from tax. Here, however, such is not the case. Although it may be true that the truck is being used in the rendition of a public utility service, it is not being so used by Stutler, the consumer here'. The public utility service being rendered in the instant case is that being rendered by A.C.E., and Stutler, the consumer, can at best be considered as merely rendering a special contract service to A.C.E. The writer fails to see how, if Stutler is unable legally to render a public utility service itself, it can be held to have purchased the truck involved here with the purpose “to use and consume” it “directly in the rendition of a public utility service.”